# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL CASE NO. 5:19-cv-00083-MR

CURTIS LUTHER DALTON,      )
                                       )
        Plaintiff,       )
                                       )    **MEMORANDUM OF**
vs.                                   )    **DECISION AND ORDER**
                                       )
MARTY LILES, et al.,         )
                                       )
        Defendants.    )
_____ )

**THIS MATTER** comes before the Court on Defendants' Motions for Summary Judgment [Docs. 46, 56].

## I.    BACKGROUND

The incarcerated Plaintiff, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 on claims arising from his April 26, 2017 high-speed chase and arrest.[1]  The Defendants are North Carolina State Troopers Marty

---

[1] According to the NCDPS website, the April 26, 2017 incidents resulted in the Plaintiff's conviction for several offenses, including multiple counts of assault with a deadly weapon on government officer/employee, larceny of a motor vehicle, and possession of a firearm by a felon. He is presently incarcerated at the Columbus Correctional Institution.  See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0930995&searchOffenderId=0930995&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last accessed Aug. 4, 2021).  The Court notes that the Plaintiff has neglected to apprise the Court of his current address, and may have abandoned this action.  [See Doc. 5: Order of Instructions at 2 (informing the Plaintiff that it is his responsibility to promptly notify the Court of any change of address and the failure to do so may result in this case's dismissal for lack of prosecution)].

Liles ("Trooper Liles") and Seth Stevenson ("Trooper Stevenson"), as well as four law enforcement officers of the Iredell County Sheriff's Office ("ICSO"): Brandon Best ("Deputy Best"), R. Vargas ("Detective Vargas"), Troy D. Miller ("Sergeant Miller"), and Gerry Toney ("Sergeant Toney").[2] The verified Complaint passed initial review on claims of excessive force and failure to intervene.[3] [Doc. 10: Order on Initial Review of the Complaint]. The Plaintiff seeks compensatory damages and litigation costs. [Doc. 1 at 10].

The Defendants now move for summary judgment. [Docs. 46, 56]. The Court notified the Plaintiff of the opportunity to respond to Defendants' Motions and to present evidence in opposition pursuant to Fed. R. Civ. P. 56. [Docs. 49, 60]. The Plaintiff has not filed a response, and the time to do so has expired. These matters are ripe for disposition.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

_____

[2] Defendant Toney is now a lieutenant.

[3] This case was assigned to Judge Frank D. Whitney at that time.

2

(1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence

3

from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

"As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, it is well established that "a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Id. (citing Davis v. Zahradnick, 600 F.2d 458, 459–60 (4th Cir. 1979) (per curiam)); see also World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., 783 F.3d 507, 516 (4th Cir. 2015) (same). Further, "an amended complaint does not divest an earlier verified complaint of its evidentiary value as an affidavit at the summary judgment stage." Goodman v. Diggs, 2021 WL 280518, at *5 (4th Cir. Jan. 28, 2021).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

4

party, there is no genuine issue for trial.'" <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009) (quoting <u>Matsushita v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

## III.   FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

At around 9:00 a.m. on April 26, 2017, Sergeant Toney was contacted by a sergeant from the Rowan County Sheriff's Office ("RCSO") requesting assistance in locating the Plaintiff, who was a suspect in a home invasion in Rowan County and had multiple outstanding Virginia arrest warrants.  [Doc. 47-4: Toney Decl. at ¶ 3].   The Plaintiff was believed to be staying in Statesville, driving a black Nissan Altima with Virginia plates.  [<u>Id.</u> at ¶¶ 3-4]. The Plaintiff's family had told RCSO officers that the Plaintiff was in possession of several shotguns and pistols and would "shoot it out" with law enforcement.  [<u>Id.</u> at ¶ 3].   An attempt to locate Plaintiff at that time was unsuccessful.  [<u>Id.</u>].

At approximately 11:54 a.m. that same day, Detective Vargas spotted a black Altima with Virginia plates, occupied by a female passenger and a male driver who was suspected to be the Plaintiff.  [Doc. 47-5: Vargas Affid. at ¶¶  3, 7].   ICSO officers attempted to initiate a traffic stop of the Altima.

[Id. at ¶ 7].  However, the Plaintiff accelerated and began to flee, and several law enforcement vehicles pursued.  [Doc. 47-4: Toney Decl. at ¶ 10; Doc. 47-5: Vargas Affid. at ¶ 5].  The Plaintiff led law enforcement officers on a high-speed chase, striking the vehicle occupied by Sergeants Toney and Pitts and almost hitting numerous other vehicles on the road.  [Doc. 47-4: Toney Decl. at ¶¶ 10-11].  The chase ended when the Plaintiff wrecked into a creek behind a private residence.  [Doc. 58-1: Stevenson Affid. at ¶ 3; Doc. 47-4: Toney Decl. at ¶ 13; Doc. 58-2: Liles Affid. at ¶ 3].  The Plaintiff fled into a wooded area on foot, leaving his female passenger injured and trapped inside the Altima.  [Doc. 58-1: Stevenson Affid. at ¶ 3; Doc. 47-4: Toney Decl. at ¶ 14; Doc. 58-2: Liles Affid. at ¶ 4].

The Plaintiff then stole a white work van and led officers on a second high-speed chase, evading stop sticks, running stop signs, driving onto private property, and striking civilian and police vehicles.  [Doc. 58-1: Stevenson Affid. at ¶ 5; Doc. 47-3: Miller Affid. at ¶¶ 6-10; Doc. 47-2: Best Affid. at ¶ 8; Doc. 58-2: Liles Affid. at ¶ 5].  The van was pursued by multiple law enforcement officers, including Deputy Best, Sergeant Miller, Trooper Liles, Sergeant Toney, and Trooper Stevenson.  [Doc. 47-2: Best Affid. at ¶ 8; Doc. 47-3: Miller Affid. at ¶¶ 7-8; Doc. 58-2: Liles Affid. at ¶ 5; Doc. 47-4: Toney Decl. at ¶ 18; Doc. 58-1: Stevenson Affid. at ¶ 4].

6

Sergeant Miller heard a directive to stop the suspect, and he attempted to perform a PIT[4] maneuver by using his vehicle to strike the van's rear bumper at the intersection of Loraindale Drive and Turnersburg Highway. [Doc. 47-3: Miller Affid. at ¶ 13]. This attempt was unsuccessful, and the van continued on Turnersburg Highway towards I-77. [Id.].

The decision was made to try to stop the van before it could get onto I-77, which was very congested with traffic. [Doc. 47-2: Best Affid. at ¶ 10]. Sergeant Miller used his vehicle to perform a second PIT maneuver as the Plaintiff attempted to access I-77 on the Exit 52 on-ramp. [Doc. 47-2: Best Affid. at ¶ 10-11; Doc. 47-3: Miller Affid. at ¶ 16]. The van spun out on the grass, then reversed and fled down the grass embankment onto I-77 southbound. [Doc. 47-2: Best Affid. at ¶ 12; Doc. 47-3: Miller Affid. at ¶ 16]. The van swerved towards Deputy Best in an apparent attempt to hit him. [Doc. 47-2: Best Affid. at ¶ 12]. Trooper Stevenson attempted to block the suspect from gaining entry onto I-77 but Stevenson was struck by another police car which caused Stevenson to collide with the van. [Doc. 58-1: Stevenson Affid. at ¶ 7]. Trooper Stevenson then attempted to set up a

---

[4] A "precision immobilization technique," "pursuit immobilization technique," or "precision intervention technique," is "a law enforcement procedure whereby a police officer bumps the rear quarter panel of the suspect's vehicle with the front quarter panel of the officer's vehicle, sending the suspect vehicle into a spin." Hammock v. Huffstickler, No. 3:11cv242-RJC, 2011 WL 3687611, at *1 (W.D.N.C. Aug. 23, 2011) (quoting Wilkinson v. Torres, 610 F.3d 546, 549 n. 1 (9th Cir. 2010)).

rolling roadblock, but his vehicle was struck multiple times by the van; the van eventually passed Stevenson's patrol vehicle on the right side. [Id.]. Trooper Stevenson then performed a third PIT maneuver to bring the chase to an end and to protect officers and civilians. [Id. at ¶¶ 7, 10]. The van spun around, impacted the median guardrail, and came to rest against the guardrail. [Doc. 58-1: Stevenson Affid. at ¶ 7; Doc. 47-2: Best Affid. at ¶ 13; Doc. 47-3: Miller Affid. at ¶ 15]. Sergeant Miller used his vehicle to pin the van against the guardrail. [Doc. 47-2: Best Affid. at ¶ 15; Doc. 47-3: Miller Affid. at ¶ 17].

Officers swarmed the van. [Doc. 58-2: Liles Affid. at ¶ 7]. The Plaintiff moved to the van's passenger seat and attempted to open the passenger side door, but he was not able to open the door. [Doc. 1: Verified Complaint at 4; Doc. 47-2: Best Affid. at ¶ 15]. Deputy Best, Sergeant Toney, and Trooper Liles approached the van with their firearms drawn, and Deputy Best commanded Plaintiff to put his hands up.[5] [Doc. 47-2: Best Affid. at ¶ 15; Doc. 47-4: Toney Decl. at ¶ 19; Doc. 58-2 at ¶ 7]. Deputy Best saw the Plaintiff drop his head and appear to move his right hand to his waist; Deputy

---

[5] The Plaintiff alleges that one officer pointed an assault rifle at him and ordered him to get out of the vehicle. [Doc. 1: Complaint at 4].

Best again ordered the Plaintiff to put his hands up.[6] [Doc. 47-2: Best Affid. at ¶ 16].

Sergeant Toney hit the van's passenger window once with his firearm but another officer stopped him from hitting the window again; Sergeant Line[7] broke the passenger side window with a baton.[8] [Doc. 47-3: Miller Affid. at ¶ 18]; [Doc. 47-4: Toney Decl. at ¶ 19]. After the window was broken, several officers exclaimed that the Plaintiff was reaching for his waist band. [Doc. 47-2: Best Affid. at ¶ 17]. The Plaintiff was then pulled out of the vehicle through the passenger side window. [Doc. 47-3: Miller Affid. at ¶ 18; Doc. 47-4: Toney Decl. at ¶ 19]. The Plaintiff hit the ground face-first; he was unable to block his fall because officers held him by the arms. [Doc.1: Verified Complaint at 5].

When the Plaintiff was extracted from the van, a number of officers surrounded Plaintiff. [Doc. 47-3: Miller Affid. at ¶ 19; Doc. 47-2: Best Affid. at ¶ 18; Doc. 47-4: Toney Decl. at ¶ 22]. Trooper Stevenson helped to hold the Plaintiff down so that he could be secured. [Doc. 58-1: Stevenson Affid.

---

[6] The Plaintiff asserts that he was unarmed, and that multiple officers were pointing guns at him, shouting conflicting commands. [Doc. 1: Verified Complaint at 4]. He claims that he "put [his] hands up and froze." [Id. at 5].

[7] Sergeant Line is not a Defendant in this case.

[8] The Plaintiff alleges that an officer broke the passenger side window with the butt of his rifle. [Doc. 1: Verified Complaint at 5].

at ¶ 8]. Officers struggled to bring the Plaintiff under control, and commanded the Plaintiff to stop reaching for his waistband and stop resisting.[9] [Doc. 58-1: Stevenson Affid. at ¶ 8; Doc. 47-3: Miller Affid. at ¶ 19; Doc. 47-2: Best Affid. at ¶ 18; Doc. 47-4: Toney Decl. at ¶ 22]. Tasers were deployed with no apparent effect on the Plaintiff. [Doc. 47-3: Miller Affid. at ¶ 19; Doc. 47-2: Best Affid. at ¶ 18].

Sergeant Toney moved around the crowd of officers and knelt on the ground. [Doc. 47-4: Toney Decl. at ¶ 22]. The Plaintiff was on his stomach and appeared to have both of his arms under his body. [Id.]. Toney "tried to grab ahold of one of the suspect's arms, so that [Toney] could help get the arm out from under the suspect's body; however, [Toney] was unable to do this," so Toney stood up and backed away. [Id. at ¶¶ 22-23].

Trooper Stevenson assisted in holding the Plaintiff down while he was restrained; he did not use any other hands-on physical force. [Doc. 58-1:

_____

[9] The Plaintiff alleges that he lost consciousness when he hit the ground face-first, his arms were secured when he came to, and officers continued to yell "stop resisting" while the Plaintiff was being tased, punched, and kicked for 2 ½ minutes. [Doc. 1: Verified Complaint at 5]. The Plaintiff thought the officers were going to kill him. [Id.]. The Plaintiff remembers being kicked on the left side of his face, which broke his jaw; he turned his face and the Defendants then began punching the right side of his face until his right orbital bone was crushed. [Id.]. The Plaintiff then tucked his chin to protect his face and "one of the defendants stomped the back of [his] head into the ground, fracturing [his] lower mandible again and breaking 2 teeth out completely." [Id. at 6]. The Plaintiff alleges that the alleged beating was captured on news helicopter video, bodycams, and dashcams. [Id.].

Stevenson Affid. at ¶ 9]. Trooper Liles attempted to handcuff the Plaintiff on the ground, but the Plaintiff kept resisting being handcuffed and would not put his hands behind his back. [Doc. 58-2: Liles Affid. at ¶ 8]. Therefore, Liles "struck the suspect with a closed fist in the arm and shoulder area to get his hands behind his back so [Liles] could handcuff him" and, after the strikes to the shoulder and arm, Liles was able to handcuff Plaintiff. [Id.]. As soon as the objectives of control and officer safety were satisfied, Liles ceased any further application of force.[10] [Id. at ¶ 11]. The amount of force that Liles used was the minimal amount of force necessary to gain control of the Plaintiff and ensure officer safety. [Doc. 58-2: Liles Affid. at ¶¶ 10-11]. Trooper Stevenson and Master Trooper Liles did not observe anyone punching or kicking the Plaintiff in the face or head, and did not observe any use of force by any officer that was excessive under the circumstances.[11] [Doc. 58-1: Stevenson Affid. at ¶¶ 11-12; Doc. 58-2: Liles Affid. at ¶¶ 12-13]. At no time during this incident did Trooper Stevenson or Trooper Liles perceive the application of force by any officer that appeared to violate the

---

[10] The Plaintiff alleges that officers continued beating him after he was handcuffed and not resisting. [Doc. 1: Verified Complaint at 7].

[11] The Plaintiff alleges that approximately 15 officers, including the named Defendants, participated in beating him. [Doc. 1: Verified Complaint at 6].

Plaintiff's rights.[12]  [Doc. 58-1: Stevenson Affid. at ¶ 13; Doc. 58-2: Liles Affid. at ¶ 14].

Sergeant Toney's view of the Plaintiff was partially obscured.  Sergeant Toney did not see anyone hit or kick the Plaintiff or use what Toney believed to be excessive force.  [Doc. 47-4: Toney Decl. at ¶ 26].  Deputy Best, Sergeant Miller, and Detective Vargas's views of the Plaintiff were obscured because other officers were between these officers and Plaintiff.  [Doc. 47-2: Best Affid. at ¶ 19; Doc. 47-3: Miller Affid. at ¶ 20; Doc. 47-5: Vargas Affid. at ¶ 19].  Best, Miller, and Vargas stood back and did not join the struggle.  [Doc. 47-2: Best Affid. at ¶ 18; Doc. 47-5: Vargas Affid. at ¶ 19; Doc. 47-3: Miller Affid. at ¶¶ 19-20].  Best, Miller, and Vargas did not see anyone hit or kick the Plaintiff, or see anyone use what these officers believed to be excessive force.  [Doc. 47-2: Best Affid. at ¶ 19; Doc. 47-3: Miller Affid. at ¶ 20; Doc. 47-5: Vargas Affid. at ¶ 19].  If Best, Miller, Toney or Vargas had seen any officer violating Plaintiff's constitutional rights, these officers would have attempted to intervene.  [Doc. 47-2: Best Affid. at ¶ 19; Doc. 47-3: Miller Affid. at ¶ 20; Doc. 47-4: Toney Decl. at ¶ 26; Doc. 47-5: Vargas Affid. at ¶ 19].

---

[12] The Plaintiff alleges that the Defendants used unreasonable, excessive force in the course of his arrest after he was handcuffed and was not resisting.  [Doc. 1: Verified Complaint at 7].

The Plaintiff sustained multiple contusions and abrasions to his face and injuries to his neck, spine, ribcage, skull, and mandible.  [Doc. 1: Verified Complaint at 8].  The Plaintiff required reconstructive surgery, including metal plates in his skull and mandible for which he was hospitalized until April 30, 2017.[13]  [Id. at 6, 8].  The Plaintiff suffers chronic pain in his jaw, PTSD, and flashbacks.  [Id. at 8].

## IV.  DISCUSSION

### A.  Sovereign Immunity

A suit against a state official in his official capacity is construed as a claim against the state itself.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts.  See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

---

[13] The Plaintiff claims that his face was so disfigured that ICSO used a mugshot from 2013 to book him on charges stemming from the April 26, 2017 incident.  [Doc. 1: Verified Complaint at 6].

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983.  See Quern v. Jordan, 440 U.S. 332, 343 (1979).  Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983.  See generally Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina).

To the extent that the Plaintiff sued Trooper Liles and Trooper Stevenson in their official capacities as state employees, they are entitled to summary judgment on such claims.

## B.    Excessive Force

The Fourth Amendment prohibits police officers from using force that is "excessive" or not "reasonable" in the course of making an arrest.  Graham v. Conner, 490 U.S. 386, 388 (1989); Meyers v. Baltimore Cnty., Md., 713 F.3d 723 (4th Cir. 2013).  Whether an officer has used excessive force to effect an arrest is based on "objective reasonableness," taking into account "the severity of the crime at issue, whether the suspect poses an immediate to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight."  Graham, 490 U.S. at 396, 399.  An officer is "authorized to take such steps as [are] reasonably necessary to

14

protect [his] personal safety and to maintain the status quo during the course of the stop." United States v. Hensley, 469 U.S. 221, 235 (1985).

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., Md., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204.

Liberally construing the Complaint, the Plaintiff appears to allege that Defendants used excessive force by: performing a PIT maneuver to stop his vehicle; pointing firearms at Plaintiff after the van came to rest; pulling Plaintiff out of the vehicle by his arms and allowing his face to collide with the ground; and beating him while he was restrained and not resisting.

Any suggestion that officers unreasonably executed the PIT maneuver to stop his vehicle does not support an excessive force claim. It is undisputed that Sergeant Miller and Trooper Stevenson used the PIT maneuver in attempts to stop the Plaintiff's vehicle. The undisputed forecast

of evidence establishes that the Plaintiff, who was suspected of a home invasion robbery and had multiple Virginia warrants, led law enforcement officers on two high-speed chases while driving erratically and running stop signs; that the Plaintiff wrecked the first vehicle he was driving and continued his flight in a second, stolen vehicle; that the Plaintiff caused collisions with multiple law enforcement and civilian vehicles; and that law enforcement officers feared that the Plaintiff's continued flight would further endanger law enforcement and civilians, especially if the Plaintiff entered the congested interstate. It was objectively reasonable for Sergeant Miller and Trooper Stevenson to conclude that the car chase that the Plaintiff initiated posed a substantial and immediate risk of serious physical injury to others, and to attempt to terminate the chase by employing the PIT maneuver. See Scott v. Harris, 550 U.S. 372, 386 (2007) ("A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death.").

The Plaintiff appears to suggest that various officers unnecessarily pointed firearms at him after the van came to rest on I-77. It is undisputed that Deputy Best, Sergeant Toney, and Trooper Liles approached the stopped van with their firearms drawn, and that Sergeant Toney and Trooper

Liles pointed their firearms at the Plaintiff. "[A]pproaching a suspect with [a] drawn weapon[] is an extraordinary measure," but this level of intrusion can be justified "as a reasonable means of neutralizing potential dangers to police and innocent bystanders." United States v. Sinclair, 983 F.2d 598, 602 (4th Cir. 1993). Here, the undisputed forecast of evidence demonstrates the existence of circumstances that made it objectively reasonable to approach the Plaintiff with weapons drawn, including the Plaintiff's suspected participation in a home invasion, outstanding warrants, possible possession of firearms, and repeated flight from officers. See United States v. Taylor, 857 F.2d 210, 213-14 (4th Cir. 1988) (permissible to draw weapons during stop of suspected drug traffickers, one with numerous prior convictions, including assault and assault with intent to murder). The Defendants were not required to wait for the Plaintiff to pull a weapon or attempt to resume his flight before using reasonable force to detain him. See Foote v. Dunagan, 33 F.3d 445 (4th Cir. 1994) (where an officer is approaching a subject during a Terry[14] stop who is suspected to be armed and dangerous does not need probable cause to justify drawing his weapon; "the Constitution does not require the officer who finds himself in such circumstances to 'ask [the] question and take the risk that the answer might be a bullet.") (quoting Terry,

---

[14] Terry v. Ohio, 392 U.S. 1 (1968).

392 U.S. at 33 (Harlan, J., concurring)). Therefore, it was not excessive or unreasonable for these Defendants to draw their firearms and point them at the Plaintiff while he was unsecured in the stopped van.

The Plaintiff alleges that his face collided with the ground because officers pulled him out of the van by his arms, and that he was injured as a result. It is undisputed that, after the van came to a rest on I-77, an officer broke the van's passenger window, and the Plaintiff was pulled from the van through the window. The Defendants have submitted evidence that Sergeant Line of ICSO broke the van's passenger window and that ICSO deputies removed the Plaintiff from the vehicle. [Doc. 47-3: Miller Affid. at ¶ 18; Doc. 58-2: Liles Affid. at ¶ 8]. However, the Plaintiff has not presented any forecast of evidence whatsoever from which a jury could find that any of the named Defendants participated in pulling the Plaintiff from the van or allowed the Plaintiff's face to collide with the ground. The Defendants' sworn statements indicate that they had no such involvement in the incident. [Doc. 47-3: Miller Affid. at ¶ 18; Doc. 47-4: Toney Decl. at ¶¶ 19-20; Doc. 47-2: Best Affid. at ¶ 17; Doc. 47-5: Vargas Affid at ¶ 20]. Further, the Plaintiff has failed to present a forecast of evidence that any of the Defendants witnessed other officers allowing the Plaintiff's face to strike the ground, had the opportunity to intervene, and failed to do so. [Doc. 47-2: Best Affid. at ¶ 19;

Doc. 47-3: Miller Affid. at ¶ 20; Doc. 47-4: Toney Decl. at ¶ 26; Doc. 47-5: Vargas Affid. at ¶ 19; Doc. 58-1: Stevenson Affid. at ¶ 12-13; Doc. 58-2: Liles Affid. at ¶¶ 13-14].

Finally, the Plaintiff alleges that "the Defendants and other unidentified officers in the swarm" tased, kicked, punched, and stomped him after he was restrained and was not resisting. [Doc. 1: Verified Complaint at 5-6]. Deputy Best, Sergeant Miller, Sergeant Toney, and Detective Vargas all state that they did not use any hands-on force against the Plaintiff whatsoever. [Doc. 47-2: Best Affid. at ¶ 18; Doc. 47-3: Miller Affid. at ¶ 19; Doc. 47-4: Toney Decl. at ¶ 23; Doc. 47-5: Vargas Affid. at ¶ 19]. The Plaintiff has failed to forecast any evidence, aside from his own conclusory allegations, that these the Defendants did, in fact, use force against him. See generally Evans v. Tech. Apps. & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (an affidavit submitted in support of a motion for summary judgment cannot be conclusory or based on hearsay). Therefore these Defendants are entitled to judgment as a matter of law on the excessive force claim.

Trooper Stevenson admits that he held the Plaintiff down while he was being restrained outside the van. [Doc. 58-1: Stevenson Affid. at ¶ 9]. Trooper Stevenson did not use any other hands-on physical force against the Plaintiff, nor did he discharge a weapon. [Id.]. It was reasonable to hold

19

down a potentially armed felony suspect who had repeatedly attempted to flee from officers, including two separate high-speed chases. See Pegg v. Herrnberger, 845 F.3d 112, 120 (4th Cir. 2017) (taking a resisting arrestee to the ground and pinning him so that he could be handcuffed was objectively reasonable).

Trooper Liles admits that he attempted to handcuff the Plaintiff outside the van, but that the Plaintiff kept resisting and would not place his hands behind his back. [Doc. 58-2: Liles Affid. at ¶ 8]. Therefore, Liles "struck [Plaintiff] with a closed fist in the arm and shoulder area to get [Plaintiff's] hands behind his back so [Liles] could handcuff him." [Id.]. This force was in direct response to the Plaintiff's resistance to being handcuffed. [Id. at ¶¶ 9-10]. The Plaintiff posed an immediate risk to officer safety, as demonstrated by his active resistance and attempts to evade arrest. Under these circumstances, the force that Liles applied was the minimal amount of force necessary to gain control of Plaintiff and ensure officer safety. This use of force was objectively reasonable under the circumstances. See, e.g., Williams v. Ingham, 373 F. App'x 542, 548 (6th Cir. 2010) (delivering closed-fist blows to plaintiff's back and applying a taser after he resisted arrest following high speed car chase was objectively reasonable); Mobley v. Palm Beach Cty. Sheriff Dep't, 783 F.3d 1347, 1355 (11th Cir. 2015) ("striking,

kicking, and tasing the resisting and presumably dangerous suspect in order to arrest him were not unreasonable uses of force" against suspect who had led officers on high speed chase and struck an officer with his vehicle).

The Plaintiff has not attempted to rebut the sworn statements of Trooper Stephenson and Trooper Liles detailing the actions that they took in relation to the Plaintiff's apprehension and arrest. The Plaintiff's conclusory allegations that these Defendants were among the "swarm" of officers who tased, kicked, punched, and stomped him, are insufficient to create a genuine dispute of material fact on this issue.[15] See Evans, 80 F.3d at 962. No rational trier of fact could find that any of the Defendants used more force than was necessary to subdue the Plaintiff and effectuate his arrest.

Further, each Defendant specifically denies witnessing any officer kick or punch the Plaintiff's head or face, use other excessive force against the Plaintiff, or violate the Plaintiff's constitutional rights. [Doc. 58-1: Stevenson Affid. at ¶¶ 11-13; Doc. 58-2: Liles Affid. at ¶¶ 12-14; Doc. 47-2: Best Affid. at ¶ 19; Doc. 47-3: Miller Affid. at ¶ 20; Doc. 47-4: Toney Decl. at ¶ 26; Doc. 47-5: Vargas Affid. at ¶ 19]. Defendants Best, Miller, Toney, and Vargas further state that they would have attempted to intervene had they seen any

---

[15] The Court notes that the Plaintiff has failed to file any news helicopter video, bodycam, or dashcam evidence which, he alleges in the Complaint, captured the beating. [Doc. 1: Verified Complaint at 6].

officers violating the Plaintiff's constitutional rights. [Doc. 47-2: Best Affid. at ¶ 19; Doc. 47-3: Miller Affid. at ¶ 20; Doc. 47-4: Toney Decl. at ¶ 26; Doc. 47-5: Vargas Affid. at ¶ 19]. The Plaintiff has failed to present any forecast of evidence from which a reasonable jury could conclude that these Defendants witnessed other officers use excessive force, were in a position to intervene, and failed to do so. Thus, there is no genuine dispute of material fact on the question of bystander liability.

In sum, the Defendants have come forward with a forecast of evidence demonstrating that their actions were objectively reasonable under the totality of the circumstances, and the Plaintiff has failed to forecast any evidence that the Defendants used excessive force against him or witnessed other officers use excessive force and failed to intervene. The Plaintiff thus has failed to demonstrate the existence of a genuine dispute of material fact for trial. Therefore, Defendants' Motions for Summary Judgment will be granted.

## C.    Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*). "To determine whether an officer is entitled to

qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because the Plaintiff has not presented a forecast of evidence that the Defendants violated a constitutional right, the Defendants are also entitled to summary judgment on the grounds of qualified immunity. It was not clearly established at the time of the incident that it was unconstitutional for officers to use PIT maneuvers; point firearms; bodily remove a suspect from a stopped vehicle; or use force including closed-fist strikes while attempting to apprehend a resisting felony suspect who was believed to be armed and dangerous, had outstanding warrants, and led officers on two high-speed chases resulting in damage to numerous law enforcement and private vehicles and endangering officers and the public. Therefore, the Court grants summary judgment for the Defendants on this ground as well.

## V.    CONCLUSION

For the reasons stated herein, the Court will grant the Defendants' Motions for Summary Judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motions for Summary Judgment [Docs. 46, 56] are **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully directed to mail a copy of this Order to the Plaintiff at: Columbus Correctional Institution, 1255 Prison Camp Road, Whiteville, NC 28472, and terminate this action.

**IT IS SO ORDERED.**

Signed: August 9, 2021

Martin Reidinger
Chief United States District Judge